UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

NICOLE JOSEPH-FORD                          CIVIL ACTION

VERSUS                                      NO: 25-1625

ORLEANS PARISH SHERIFF                      SECTION: "A" (3)
OFFICE ET AL.

## ORDER AND REASONS

Before the Court is a **Motion to Dismiss Plaintiff's Amended Complaint (R. Doc. 25)** filed by Defendants and opposed by Plaintiff Nicole Joseph-Ford.[1] This order and reasons assumes familiarity with this employment discrimination case and recounts only those facts strictly necessary to resolve the pending motion. In short: Joseph-Ford alleges that she was the target of a retaliation conspiracy spearheaded by her supervisor, Ronald Coleman, which eventually led to her wrongful termination. Plaintiff and Coleman are both African American. Plaintiff alleges that Coleman began this campaign against her after she sided with an employee of a different race during a dispute with Coleman. For the following reasons, the Court **DENIES IN PART** and **GRANTS IN PART** the motion.

### I.    Legal Standard

The central issue in a Rule 12(b)(6) motion to dismiss is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief. *Gentilello*

---

[1] The Court previously granted a motion to dismiss filed by Defendants (R. Doc. 16) and allowed Plaintiff to amend her complaint only as to the claims not dismissed as a matter of law.

1

v. Rege, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)). To avoid dismissal, a plaintiff must plead sufficient facts to "state a claim for relief that is plausible on its face." *Id.* (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* (quoting *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). Legal conclusions must be supported by factual allegations. *Id.* (quoting *Iqbal*, 129 S. Ct. at 1950).

In the context of a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (citing *Tellabs, Inc. v. Makor Issues & Rights*, Ltd., 551 U.S. 308 (2007); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Lovick v. Ritemoney, Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004)). However, the foregoing tenet is inapplicable to legal conclusions. *Iqbal*, 129 S. Ct. at 1949. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550, U.S. 544, 555 (2007)).

2

## II.    DISCUSSION

### a.  Claims Against the Orleans Parish Sheriff's Office ("OPSO")

The Court previously dismissed the claims against OPSO because it is not an entity or person capable of being sued. R. Doc. 16; *See e.g., Cozzo v. Tangipahoa Parish Council-President Government,* 279 F.3d 273, 283 (5th Cir. 2002). Accordingly, the claims against the OPSO are once again dismissed with prejudice.

### b.  Defamation Claims

Defamation is a tort which involves the invasion of a person's interest in his or her reputation and good name. *Costello v. Hardy*, 864 So. 2d 129, 139 (La. 2004) (citing *Fitzgerald v. Tucker*, 737 So. 2d 706, 715 (La. 1999); *Trentecosta v. Beck*, 703 So. 2d 552, 559 (La. 1997); *Sassone v. Elder*, 626 So. 2d 345, 350 (La. 1993)).  To establish a claim for defamation under Louisiana law, a plaintiff must show (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury. *Fitzgerald v. Tucker*, 737 So. 2d 706, 715 (La. 1999). The Louisiana Supreme Court requires that a plaintiff must plead "with reasonable specificity the defamatory statements allegedly published by defendant." *Id.* at 713. Furthermore, the plaintiff "must name the individual offenders and allege separate acts of defamation as to each, including specific defamatory statements." *Obienu* v. Algiers Charter School Association, Inc., No. 25-417, 2026 WL 25094, at *5 (E.D. La. 2026) (Vitter, J.) (quoting *Badeaux v. Sw. Computer Bureau, Inc.*, 929 So. 2d 1211, 1218 (La. 2006)). Federal courts in this state have adopted this pleading standard. *Id.*

3

In her amended complaint, Plaintiff alleges that Defendants "made defamatory, mischaracterizing statements that Plaintiff was a drug addict to fellow employees, while Orleans Parish Sheriff's Office and Susan Huston made defamatory, mischaracterizing statements that Plaintiff was a drug addict and shared the results of her confidential drug screening with prospective employers and the Louisiana Workforce Commission."[2] Plaintiff further alleges that these statements were made after Coleman and Huston had knowledge that she possessed a valid medical prescription to use marijuana.

With respect to element 2) of the defamation claim, Defendants argue that any statements made by Sheriff Hutson are protected by a qualified privilege because they were made to prospective employers and the Louisiana Workplace Commission. Defendants also contend that the statements made by Coleman do not satisfy the publication requirement because they were only made to other OPSO employees.

Liability for defamation does not attach from privileged publications or communication. *Hines v. Ark. La. Gas Co.*, 613 So. 2d 646, 656 (La. App. 2d Cir. 1993) (citing *Toomer v. Breaux*, 146 So. 2d 723 (La. App. 3d Cir. 1962)). "Communications between a former employer and prospective employers of an employee enjoy a conditional or qualified privilege, and such a communication is not actionable when made in good faith for legitimate purposes." *Chapman v. Ebeling*, 945 So. 2d 222, 228 (La. App. 2nd Cir. 2006) (citing *Butler v. Folger Coffee Co.*, 524 So.2d 206 (La. App.

---

[2] R. Doc. 17, Amend. Compl., ¶ 57.

4

4th Cir. 1988). Likewise, statements made to the Louisiana Workforce Commission are also protected by a qualified privilege. *See Fisher v. ASI Credit Union*, 223 So. 3d 779, 783-84 (La. App. 5th Cir. 2017).

In *Phillips v. L. Brands Service Company, L.L.C.*, the Fifth Circuit explained that, in defamation actions, "good faith" is synonymous with acting "without malice," meaning the speaker must possess reasonable grounds for believing the statement to be true. 82 F.4th 291, 300 (5th Cir. 2023). Here, Plaintiff adequately alleges that Sheriff Hutson's statements were not made in good faith because she had or should have had knowledge that Plaintiff's drug use was due to a valid medical prescription, not an addiction. At the current stage of this lawsuit, the Court finds that Plaintiff's defamation cause of action is facially plausible. However, the Court does note that the attachment of privilege rests on "good faith," not accuracy. If the alleged statements made by Sheriff Hutson turn out to be inaccurate, but made in good faith, then they would still be characterized as privileged communications. Accordingly, the Defendants' 12(b)(6) motion as to the defamation claim against Sheriff Hutson is denied.

Louisiana appellate courts have held that any intra-corporate communication among officers or agents of the same corporation, in connection with their duties for the corporation, is a communication of the corporation, not a publication to a third party." *Source Prod. & Equip. Co. v. Schehr*, No. 16-17528, 2017 WL 6623994, at *2 (E.D. La. Dec. 28, 2017) (quotations omitted). Nowhere in Plaintiff's amended complaint does she allege that Coleman's alleged defamatory statements were made

5

to parties *not* employed by OPSO. Accordingly, Coleman's intra-corporate statements are insufficient to constitute publication.    Therefore, Plaintiff's defamation claim against Coleman is dismissed.

### c.  Employment Discrimination Claims

Plaintiff alleges that her termination had to do, at least in part, with her status as an African American woman. To prevail under 42 U.S.C. § 1981, a plaintiff must allege (1) the plaintiff is a member of a racial minority, (2) the defendant had an intent to discriminate on the basis of race, (3) the discrimination concerns one or more of the activities enumerated in the statute, such as the making and enforcing of a contract. *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997).

Previously, the Court found that Plaintiff sufficiently alleged that she is a member of a racial minority and that the alleged discrimination concerns an activity enumerated in § 1981, the termination of a contract of employment. *See id.* However, she had not pleaded any facts that show that Defendants intended to discriminate against her on the basis of her race. Plaintiff's amended complaint did not remedy this defect. She still does not allege any specific instances where Defendants treated her less favorably because of her race. *See Every v. Ajax Mortg. Loan Tr. 2020- C, by U.S. Bank Nat'l Ass'n*, No. 25-1585, 2026 WL 1109348, at *2 (E.D. La. Apr. 24, 2026) (Milazzo, J.) (citing *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 387 (5th Cir. 2017)).

According to the amended complaint, the retaliation campaign began after Plaintiff witnessed Coleman make disparaging remarks about another employee of a

6

different race than either Plaintiff or Coleman (who are both African American).[3] When read in a light most favorable to the plaintiff, this shows that Coleman retaliated against her after she sided with another employee during an argument. Not for racially motivated reasons. If anything, Plaintiff's amended complaint shows that Coleman displayed racial animus towards people not of Plaintiff's race. Plaintiff makes no other allegations that she was terminated because of her race, or even that Coleman "perpetuated a hostile work environment" against her for racial reasons. Accordingly, Plaintiff's § 1981 claim is dismissed with prejudice.

### c.  Intentional Infliction of Emotional Distress ("IIED") Claims

To recover for IIED under Louisiana law, a plaintiff must prove (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct. *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991). To prevail, the conduct at issue "must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.*

"[C]ases arising in the workplace are limited to situations where the distress is more than a reasonable person could be expected to endure and the offending conduct is intended or calculated to cause severe emotional distress." *Washington v.*

---

[3] R. Doc. 17 ¶¶ 71-72.

*Mother Works, Inc.*, 197 F. Supp. 2d 569, 572 (E.D. La. 2002) (quoting *Nicholas v. Allstate Ins. Co.*, 765 So. 2d 1017, 1027 (La. 2000)) (internal quotations omitted). Louisiana courts have limited an IIED cause of action in the workplace to cases which involve a pattern of deliberate, repeated harassment over a period of time. *Bertaut v. Folger Coffee Co.*, No. 06–2437, 2006 WL 2513175, at *3 (E.D. La. 2006) (citing *Nicholas*, 765 So. 2d at 1017; *White*, 585 So.2d at 1209; *Maggio v. St. Francis Med. Ctr., Inc.*, 391 So.2d 948 (La. App. 2nd Cir. 1980)). Employment disputes, even those involving discrimination and harassment, will rarely rise to the level of intentional infliction of emotional distress. *Bertaut*, 2006 WL 2513175 at *4 (citations omitted). Ultimately, "[c]onduct in the workplace, even if calculated to cause some degree of mental anguish will rarely be so severe that it will rise to the level of outrageous conduct." *Bertaut*, 2006 WL 2513175, at *4 (citing *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 514 (5th Cir. 1994)).

Plaintiff alleges that "Employees and/or Agents of the Orleans Parish Sheriff's Office engaged in outrageous and extreme conduct when they vandalized the office of the plaintiff, damaging her personal items and causing great emotional distress."[4] Further, "when the plaintiff inquired about the damages and vandalism, employees and/or agents of the defendant [...] unbelievably told the plaintiff that the damages was [sic] caused by a possum."[5] Finally, Plaintiff alleges that fellow employees "intentionally misplaced" Plaintiff's key to an OPSO vehicle. "These actions,

---

[4] R. Doc. 17 ¶ 81.
[5] *Id.* ¶ 82.

combined with defendant's knowledge of the Plaintiff's existing mental disabilities, show that defendants […] intended to cause the plaintiff further mental distress […]"[6]

Although these claims, if true, are upsetting, they simply do not rise to the requisite level of "extreme and outrageous" conduct to constitute the tort of IIED under Louisiana law. Further, Plaintiff has not alleged "a pattern of deliberate, repeated harassment over a period of time" required for an IIED claim. *See White*, 585 So. 2d at 1210.

### d. Negligence Claims

Plaintiff alleges that Defendants breached the duty of care owed to her when "they allowed the plaintiff's personal belongings to be vandalized and the plaintiff to be harassed by fellow employees, intentionally inflicting emotional distress on the plaintiff, and did not adequately train or supervise their employees and/or agents."[7] As Defendants correctly point out, Plaintiff's negligence claim is barred by Louisiana's worker's compensation scheme. Courts have repeatedly held that an employee's sole remedy for negligence-based claims against an employer lies in worker's compensation. *See, e.g., McClendon v. New Orleans Sewerage & Water Bd.*, No. 23-4216, 2023 WL 8281566, at *12 (E.D. La. Nov. 30, 2023) (van Meerveld, M.J.) (quoting *Lefkowitz v. Admin. of Tulane Educ. Fund*, No. 21-1578, 2022 WL 376148 at *8 (E.D. La. Feb. 8, 2022)) (dismissing negligence-based claim against employer because "Louisiana's Workers' Compensation law provides the exclusive remedy for

---

[6] *Id.* ¶ 84.

[7] R. Doc. 17 ¶¶ 86-87.

any claim of negligence against an employer").

Plaintiff responded by arguing "The Louisiana Workers' Compensation Act generally provides the exclusive remedy for employees seeking recovery against their employers for workplace injuries. However, the Legislature expressly created an exception to that exclusivity provision for injuries resulting from intentional acts."[8] As a matter of law, a negligent action cannot be intentional. Accordingly, Plaintiff's negligence claims are dismissed.

### e.  Wrongful Termination Claims

Under Louisiana law, when an employee's job is for an indefinite term, the employment is terminable at the will of either the employer or the employee. "An employer is at liberty to dismiss an at-will employee at any time for any reason without incurring liability for the discharge, provided the termination does not violate any statutory or constitutional provision, such as anti-discrimination laws." *Johnson v. Acosta*, No. 10-1756, 2010 WL 4025883, at *6-8 (E.D. La. 2010) (Wilkinson, Jr., J.) (citing Stewart *v. Courtyard Mgmt. Corp.*, 155 F. App'x 756, 758 (5th Cir. 2005); La. Civ.Code art. 2747) (citations cleaned up); *see also McCoy v. Wade*, No. 06–2292, 2007 WL 1098738, at *2 (W.D. La. 2007) (Hornsby, M.J.) ("Neither federal nor Louisiana law provide[s] a cause of action for wrongful termination or mere unfair treatment in the workplace.")

Plaintiff alleges that she was "the target of a pattern of racial discrimination

---

[8] R. Doc. 26, Pl.'s Opp. to Def.'s Mot. to Dismiss, at 14.

10

stemming from an incident with Ronald Coleman, wherein it was insinuated she was a 'race traitor.'"[9] She goes on to state that "other employees who tested positive on drug screenings were afforded the opportunity to continue their employment with the Orleans Parish Sheriff's Office."[10] Plaintiff further alleges that La. R.S. 23:301 is "one of the primary statutory exceptions tempering the at-will [employment] doctrine."[11] Louisiana Revised Statute 23:301 is the Louisiana Employment Discrimination Law ("LEDL"). The Court previously found that Plaintiff has not pleaded facts showing she complied with the LEDL by providing any pre-suit notice. Plaintiff has not cured this defect in her amended complaint. Accordingly, any claims for wrongful termination are dismissed.

### f.  Section 1983 Claims

"Section 1983 provides a cause of action for persons who are subjected to the deprivation of any constitutional right by a person acting under the color of state . . . law." *Phillips ex rel. Phillips v. Monroe Cnty., Miss.*, 311 F.3d 369, 373 (5th Cir. 2002) (citing 42 U.S.C. § 1983). There are three elements to establish liability in a § 1983 action. *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (citing *Bush v. Viterna*, 795 F.2d 1203, 1209 (5th Cir. 1986)). To prevail, the plaintiff must show "(1) a deprivation of a right secured by federal law, (2) that occurred under color of state

---

[9] R. Doc. 17 ¶ 91.
[10] *Id.* ¶ 94.
[11] *Id.*

law, and (3) was caused by a state actor." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999).

Plaintiff states that she has the "right to be free from discrimination in public employment on the basis of race, sex and disability, and the right to be free from arbitrary and capricious governmental action, including pretextual termination."[12] She brings her § 1983 claim under the Equal Protection Clause of Fourteenth amendment. She alleges that:

> Defendant Susan Hutson, as final policymaker for the Orleans Parish Sheriff's Office, was personally involved in and/or deliberately indifferent to the constitutional violations suffered by Plaintiff, including: Failing to implement policies protecting employees with lawful medical marijuana prescriptions; Authorizing or ratifying the misuse of drug testing policies; Failing to adequately train and supervise employees regarding lawful practices; and Allowing a culture of retaliation, discrimination, and unlawful employment practices to persist.
>
> Defendant Ronald Coleman was personally involved in the violations of Plaintiff's rights by Participating in or causing Plaintiff's pretextual drug testing despite knowledge of her lawful prescription; Retaliating against Plaintiff after she refused to support him in a workplace dispute and reported his conduct; Contributing to and/or effectuating Plaintiff's termination; and Participating in and/or facilitating the creation of a hostile work environment.[13]

"To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against her because of her membership in a protected class." *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir.

---

[12] R. Doc. 17 ¶ 95.
[13] *Id.* ¶¶ 98-99.

12

1999) (quotations omitted). As discussed above, Plaintiff has not alleged sufficient facts that she was discriminated against *because of* her status as a protected class (i.e., race, gender, disability).[14] Accordingly, any claims brought under the Equal Protection clause are dismissed.

Plaintiff states in her opposition that she also alleges a due process claim under the Fourteenth Amendment. Although it is not clear that Plaintiff properly alleged this claim in her amended complaint, the Court shall undergo an analysis out of an abundance of caution. To state a claim for violation for either substantive or procedural due process under § 1983, "a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest." *Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001). Whether a government employee has a property interest in her continued employment depends on state law. *McDonald v. City of Corinth, Tex.*, 102 F.3d 152, 155 (5th Cir. 1996). "An employee has a property interest in his employment only when a legitimate right to continued employment exists." *Id.* Plaintiff's § 1983 due process action fails because she has not alleged a constitutionally protected property

---

[14] It is the Court's understanding that Plaintiff seeks justice because of what she perceives as wrongful termination and retaliation for her opposition to Coleman in a dispute with another employee. However, many courts have held, as a matter of law, no retaliation claim may be brought under § 1983 based on the Equal Protection Clause. *Bernheim v. Litt*, 79 F.3d 318, 323 (2nd Cir. 1996); *Ratliff v. DeKalb County*, 62 F.3d 338, 340–341 (11th Cir. 1995) (no clearly recognized right to be free from retaliation exists under the Equal Protection Clause); *Gray v. Lacke*, 885 F.2d 399, 414 (7th Cir. 1989), cert. denied, 494 U.S. 1029 (1990); *Gates v. The City of Dallas*, No. 96-2198D, 1998 WL 401602, at *5 (N.D. Tex. 1998); *Cordova v. City of Mansfield*, No. 4-1499, 2006 WL 2513923, at *7 (W.D. La. 2006). The appropriate statute to bring this action under would be Title VII, but Plaintiff has already declared that "she did not file an EEOC charge because she is not proceeding under Title VII." R. Doc. 13 at 3.

or liberty interest. The Court has already found that Plaintiff has not sufficiently alleged facts showing discrimination based on race, sex or her perceived mental disability (i.e., her diagnosed depression and anxiety). Accordingly, Plaintiff was an at-will employee and had no constitutionally protected property interest under which to bring her due process claim.

Accordingly;

IT IS FURTHER ORDERED that the **Motion to Dismiss Plaintiff's Amended Complaint (R. Doc. 25)** is **DENIED IN PART** as to the defamation claim brought against Sheriff Huston only.

IT IS FURTHER ORDERED that the **Motion to Dismiss Plaintiff's Amended Complaint (R. Doc. 25)** is **GRANTED** as to all other claims. These claims are **DISMISSED WITH PREJUDICE.**

IT IS FURTHER ORDERED that Plaintiff is **DENIED** leave to amend her complaint.

July 24, 2026

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE

14